afterwards be abolished. The plaintiff contends that neither of them was meant to refer to any state where abolition of imprisonment for debt had not been introduced generally or in all cases, whereas in Massachusetts it has been applied only to cases of insolvents who have surrendered all their property under her insolvent system. There, in such cases only, and none others, are they to be discharged "from arrest and imprisonment in any suit or proceeding" for their previous debts. St. 1838, c. 163. But a part of the first act of congress seems studiously provided to reach such a case, as it provides that "where by the laws of the states imprisonment for debt shall be allowed, under certain conditions and restrictions, the same conditions and restrictions shall be applicable to the process issuing out of the courts of the United States." 5 Stat. 321. Now this provision remaining, as it does, unaffected by the last act of congress, the design of this last being only to include states passing laws to abolish imprisonment for debt after 1839, it follows that an abolition of imprisonment, as in Massachusetts, where property has been surrendered, is one of those abolitions under certain "conditions and restrictions," which we are required to conform to, as much as when the abolition is total. The reason for conforming to it also applies quite as strongly in one case as in the other, because the design of congress is to follow the action of the states on this subject, whether partial or general, and in no case to continue to imprison debtors in suits between individuals in any state, unless those states continue to do it, forbearing where they forbear, and to their extent. Congress adopted, as it well might, other and fixed rules as to imprisonment for its own debtors. See cases and acts. But for private debtors, wisely left them to the policy of their own respective states. This is also in analogy to the original adoption of state forms in writs, executions, &c. These are to remain as they were in 1792 in each state, however diverse, unless changed by the supreme court or congress by subsequent provisions. And these in the circuit courts of the United States differed then as the processes differed in different states in the same manner as the abolition of imprisonment. 1 Stat. 275; [Wayman v. Southard] 10 Wheat. [23 U. S.] 1; Craig's Case [Case No. 3,325]; [Ross v. Duval] 13 Pet. [38 U. S.] 45; [Amis v. Smith] 16 Pet. [41 U. S.] 303. This course accords, too, with the rule of decision under the judiciary act [1 Stat. 73] between private suitors in the courts of the United States, changing in each state, where state legislation changes, and being different in each, if the laws in each differ. See U. S. v. Ames [Case No. 14,441]; Clark v. Sohier [Id. 2,835], and cases there cited.

The great object in all these instances, is to mould the administration of the laws and the effects of it in the courts of the United States, to those in the state courts respectively, except when the constitution or laws of the United States for wise reasons make different provisions in a few special cases. Congress thus allows individuals to have their rights settled on like principles in both courts, but by a tribunal supposed in theory to be more impartial when the action is between a citizen and a nonresident or foreigner, and is brought in the courts of the United States. Bradly v. Currier [Case No. 1,777], Mass. Dist., 1848. By conforming to the laws in each state on all these topics, collision and jealousy are avoided. The conclusion on this question is strengthened by the circumstance that all constructions ought to lean in favor of personal liberty in cases of mere civil indebtedness, where no violence, fraud or crime have been practiced. 1 Tidd, Prac. 546. Finally, the state court of Massachusetts has recently in Bristol county decided that the case of these defendants is one entitled to the privilege of having their bodies exempt from arrest on execution under the state laws, and have thus removed any ground for the idea that in yielding such an exemption here, we do not conform to the state law and its judicial interpretation in its own tribunals, so far as regards the rights of these defendants under them. Let the motion be complied with.

---

## Case No. 9,687.

MOCKBEE et al. v. UPPERMAN et al.

[5 Cranch, C. C. 535.] [1]

Circuit Court, District of Columbia. March Term, 1839.

TAXATION—TAX TITLE—INFANT'S LAND — RIGHT TO REDEEM.

Infants whose property has been sold for taxes due to the corporation of Washington, have a right to redeem at any time within one year after they have arrived at full age.

Bill in equity by [Eliza Ellen Mockbee and others against Anna Maria Upperman and the heirs of Benjamin B. Myers] to redeem property in Washington sold for taxes, and to cancel the deed made by the corporation of Washington to the purchaser at the tax-sale; or to obtain a reconveyance of the property to the infants. The complainants were the mother and two infant children; who claimed the south half of lot No. 9, in the square No. 293, in Washington, under a deed from James N. Edmonston to the mother in trust for the two children during their joint lives and the life of the survivor of them, with remainder to the mother in fee. The property was assessed in the name of Sarah Edmonston and Benjamin B. Myers; and more than two years' taxes being due thereon, it was advertised as their property and sold in June, 1832, by the collector to the said Benjamin B. Myers, who paid the amount of the taxes due thereon, namely,

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

($17.78,) but died without obtaining a deed from the mayor of Washington, according to the provisions of the charter; who on the 8th of July, 1834, made a deed to "the heirs of Benjamin B. Myers, deceased," without naming them. By the tenth section of the charter of 1820, it is provided, "that minors, mortgagees, or others having equitable interests in real property, which property shall be sold for taxes as aforesaid, shall be allowed one year after such minors coming to, or being of, full age, or after such mortgagees, and others having equitable interests, obtaining the possession of, or a decree for the sale of, such property, to redeem the property, so sold, from the purchaser or purchasers, his, her, or their assigns, on paying the amount of purchase-money so paid therefor, with ten per cent. interest thereon as aforesaid, and all the taxes that have been paid thereon by the purchaser or his assigns, between the day of sale and the period of such redemption, with ten per cent. interest on the amount of such taxes, and also the full value of the improvements which may have been made or erected on such property by the purchaser or his assigns, while the same was in his or their possession."

One of the children had arrived at full age when the bill was filed, but the year had not elapsed which was allowed for redemption. The other child was still under age.

THE COURT was of opinion that they were in time to redeem, and decreed accordingly.

---

MOE (ANDERSON v.). See Case No. 359.

MOFFAT. The (DE GRAFF v.). See Case No. 3,748.

---

## Case No. 9,688.

### MOFFAT et al. v. SOLEY.

[2 Paine, 103.] [1]

Circuit Court, S. D. New York. May Term, 1827.

COURTS — FEDERAL JURISDICTION — CITIZENSHIP— JUDICIARY ACT.

1. The 11th section of the judiciary act [1 Stat. 78] confines the jurisdiction of the circuit courts on the ground of citizenship to cases where the suit is between a citizen of a state where the suit is brought and a citizen of another state; and although the constitution gives a broader extent to the judicial power, the actual jurisdiction of the circuit courts is governed by the judiciary act.

[Cited in Wiggins v. European & N. A. Ry. Co.. Case No. 17.626; Sands v. Smith. Id. 12,305; Grover & B. Sewing-Mach. Co. v. Florence Sewing-Mach. Co., 18 Wall. (85 U. S.) 580.]

[Cited in Wills v. Home Ins. Co., 28 Iowa, 546.]

2. Nor do the subsequent clauses of the 11th section as to the defendant's arrest, &c., enlarge the jurisdiction.

3. Therefore, where a citizen of New York and a citizen of Georgia sued a citizen of Massachusetts. in New York, where he was arrested, it was *held*, that the court had not jurisdiction.

At law.

On the argument, R. Sedgwick, for plaintiffs, made the following points: I. The act of congress ought, if possible, to be so construed as to confer the whole jurisdiction authorized by the constitution. II. All the clauses of the eleventh section of the judiciary act, taken together, should be so construed as to effect this object. III. The third clause of the act was intended to prevent writs being served in one district and returnable in another. The fourth clause was intended to authorize a trial between citizens of different states, wherever or in whatever district the defendant might be arrested. IV. If such be not the construction of the fourth clause, it means nothing. If such be the construction, it follows that each of the plaintiffs had a right to sue defendant in New York.

THOMPSON, Circuit Justice. The single question in this case is whether this court has jurisdiction of the cause. One of the plaintiffs is alleged to be a citizen of the state of Georgia, and the other a citizen of New York; and the defendant is avowed to be a citizen of Massachusetts, but arrested, of course, in the state of New York.[2] By the constitution of the United States, the judicial power is declared to extend, among other cases, "to controversies between citizens of different states." By the judiciary act of 1789 (eleventh section), jurisdiction is given to the circuit court when the suit is "between a citizen of a state where the suit is brought and a citizen of another state." It will be perceived, therefore, that although by the constitution, the judicial power is declared to extend generally to controversies between citizens of different states, the judiciary act of '89, in parcelling out that jurisdiction, is not so broad as to the jurisdiction of the circuit courts, but extends it only to a suit between a citizen of the state where it is brought and a citizen of another state; and the courts of the United States have always considered their jurisdiction governed by the act of congress, although perhaps the constitution would admit of a broader interpretation.

It was decided very early (1806), by the supreme court of the United States, in the case of Strawbridge v. Curtis, 3 Cranch [7 U. S.] 267, that when the plaintiffs or defendants

---

[1] [Reported by Elijah Paine, Jr., Esq.]

[2] The act of congress of September 24, 1789, provides that the circuit courts of the United States shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of costs, the sum of five hundred dollars: 1. When the United States are plaintiffs or petitioners: 2. When an alien is a party: 3. When the suit is between a citizen of the state where the suit is brought, and a citizen of another state.